FILED'10 FEB 23 16:55 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NINA MARIE DEVERELL,

            Petitioner,       Civil No. 07-1417-CL

         v.                REPORT AND
                                     RECOMMENDATION

NANCY HOWTON,

            Respondent.

CLARKE, Magistrate Judge.

    Petitioner is in the custody of the Oregon Department of Corrections pursuant to the Amended Judgment, dated June 17, 2005, from Lane County Circuit Court Case No. 20-05-02144A, after she entered  Alford pleas to Assault in the Second Degree, Burglary in the First Degree, Kidnapping in the Second Degree, and Robbery in the First Degree. Respondent's Exhibit 101.  Pursuant to a stipulated agreement, the court sentenced petitioner to the mandatory minimum sentences of 70 months of imprisonment on the Assault and Kidnapping convictions, and to

90 months of imprisonment on the Robbery conviction. Id. The court ordered a 70 month sentence on the Burglary conviction to run concurrently, and the remaining sentences to run consecutively. Id. In sum, petitioner was sentenced to 230 months of imprisonment.

Shortly after entering her plea, petitioner moved to withdraw the plea on grounds of her "mental and emotional state" and her contention that she was "ganged up on" by her attorney, the private investigator, and the judge. Respondent's Exhibit #119. Her counsel moved to withdraw due to petitioner's allegations that he had unduly pressured her into taking the plea. Respondent's Exhibit 120. The trial court denied both motions and enforced the stipulated sentence. Respondent's Exhibit 105.

Petitioner did not directly appeal her convictions.

Petitioner filed a first amended petition for post-conviction relief, but the court denied relief. Respondent's Exhibits 123-124. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 125-129.

Petitioner filed a petition for habeas corpus relief under 28 U.S.C. § 2254, alleging four grounds for relief. Petition (#2). Respondent contends that all of petitioner's grounds for relief were procedurally defaulted when petitioner presented no federal claims to the Oregon Supreme Court. Respondent argues that even if the court considers

2 - REPORT AND RECOMMENDATION

petitioner's claim that her no contest pleas were not voluntary, relief should be denied because the post-conviction court considered a similar claim on the merits and denied relief. Respondent argues that the state court decision is entitled to deference as it was not contrary to or an unreasonable application of clearly established law as announced by the Supreme Court. Response to Petition (#26), p. 1-2.

Petitioner alleges in Ground One that his trial counsel was constitutionally defective in various respects. Petitioner alleges in Ground Two that the trial court erred in denying her motion to withdraw her pleas. Petitioner alleges in Ground Three that she was "wrongly coerced/threatened into taking a plea and wrongly sentenced." Petitioner alleges in Ground Four that she was denied effective assistance of appellate counsel.

Under 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State[.]" Exhaustion occurs when a petitioner has given the state courts a "full and fair" opportunity to consider and resolve all federal claims. Keeney v. Tomayo-Reyes, 504 U.S. 1, 10 (1992). If a petitioner can present a claim to the state's Supreme Court, he must do so to properly exhaust that claim. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).

To "fairly present" a federal claim in state court,

habeas petitioners must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996).; <u>see also</u>, <u>Castillo v. McFadden</u>, 399 F.3d 993, 1000 (9th Cir. 2005).

Furthermore, to properly exhaust a claim the petitioner must present the federal claim to the state courts in a procedural context in which the claims' merits will be considered. <u>Castille v. Peoples</u>, 489 U.SD. 346, 351-52 (1989); <u>Roettgen v. Copeland</u>, 33 F.3d 36, 38 (9th Cir. 1984; <u>Turner v. Compoy</u>, 827 F.2d 526, 529 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

If a petitioner has failed to present a federal constitutional claim to the state's highest court (*i.e.*, has failed to exhaust state remedies) and can no longer do so because of a procedural bar, that claim is procedurally defaulted. <u>Boerckel</u>, 526 U.S. t 848, citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991). Once a petitioner has procedurally defaulted a claim, federal habeas corpus review is barred unless the petitioner can demonstrate: (1) cause for the procedural default, and (2) actual prejudice from the failure. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000), <u>Coleman</u>, 501 U.S. at 750; <u>see also</u>, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>Murray v. Carrier</u>, 477 U.S. 748 (1986); <u>Hughes v. Idaho Bd. of Corr.</u>, 800 F.2d 905 (9th Cir. 1986).

4 - REPORT AND RECOMMENDATION

Cause for a procedural default exists only if petitioners "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. Prejudice exists only if petitioners show that the procedural default "worked to [petitioner's] actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Demonstrating a mere possibility of prejudice is insufficient. Id.

Procedural defaults may also be excused by demonstrating a "fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To establish the fundamental miscarriage of justice exception to the exhaustion requirement requires a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 329 (1995); Calderon v. Thompson, 523 U.S.538, 559 (1998).

The "mere fact that counsel failed to recognize it, does not constitute cause for a procedural default." Murray, 477 U.S. at 486. Similarly, because there is no constitutional right to counsel in post-conviction proceedings, the actions of PCR counsel cannot be constitutionally ineffective assistance amounting to "cause" to excuse a procedural default. Coleman, 501 U.S. at 752-57.

Petitioner alleged a number of claims before the post-conviction court, including a claim that her counsel was ineffective under the Sixth and Fourteenth Amendments to the

5 - REPORT AND RECOMMENDATION

United States Constitution for failing to adequately advise her regarding her pleas. Respondent's Exhibit 106, p. 4-5. The PCR trial court denied relief. Respondent's Exhibits 123, 124. Petitioner's appeal of the PCR judgment included a claim that her trial counsel was constitutionally ineffective for failing to advise her, and that he "pressured and coerced" her to accept the plea offer. Respondent's Exhibit 125, p. 4. The Oregon Court of Appeals affirmed without opinion. Respondent's Exhibit 129.

In her petition for review by the Oregon Supreme Court petitioner alleged only one claim: "The court below erred when it denied post-conviction relief. Petitioner's trial counsel failed to provide effective assistance of counsel by failing to ensure that petitioner's no contest pleas were voluntary. Specifically, trial counsel did not adequately communicate with petitioner concerning her options (such as pleading guilty with no sentencing agreement or going to trial) and the potential sentences after trail, and the legal propriety of consecutive sentences, to which petitioner was agreeing in the plea agreement. Petitioner was so uninformed about the critical facts and circumstances of her case that the no contest pleas were neither knowing or voluntary." Respondent's Exhibit 127, p. 1.

However, in her Petition for Review to the Oregon Supreme Court, petitioner failed to cite to or argue any provision of the United States Constitution or any federal law that she

claimed was violated by her trial counsel's actions. Thus, petitioner failed to present any federal claim to the Oregon Supreme Court. As noted above, to "fairly present" a claim, a petitioner must make the federal basis of a claim explicit either by citing to federal law or to the decisions of federal courts, even if the federal basis is "self-evident." Gatlin v. Madding, 189 F.3d 882, 888 (9ᵗʰ Cir. 1999) cert denied, 528 U.S. 1087 (200) (citing Anderson v. Harless, 459 U.S. 4, 7 (1982).

The time to present any claims to the Oregon Supreme Court has run[1] and therefore petitioner's claims in this proceeding are procedurally defaulted. Petitioner has not established any cause and prejudice for her procedural default or entitlement to the fundamental miscarriage of justice exception to the exhaustion requirement.

Assuming arguendo that petitioner's claim to the Oregon Supreme Court could be construed as a properly exhausted federal claim or otherwise properly before this court, I find as follows.

Petitioner's federal habeas petition was filed after April 24, 1996, and is therefore governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.

---

[1]ORS 138.560 requires that post-conviction appeals be filed within 30 days after entry of the final judgment. ORS 2.520 requires that petitions for review in the Oregon Supreme Court be filed within 35 days of the Court of Appeal's decision. See also, ORAP 9.05(2) (requiring petitions for review to the Supreme Court to be filed within 35 days form the Court of Appeal's decision.

Woodford v. Garceau, 538 U.S. 202, 210 (2003). Under AEDPA, habeas relief may be granted only when a state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings." 28 U.S.C. § 2254(d); Wiggins v. Smith, 539 U.S. 510, 520 (2003).

A state court's decision is "'contrary to' federal law if it fails to apply the correct controlling Supreme Court authority or comes to a different conclusion ... [from] a case involving materially indistinguishable facts." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing Bell v. Cone, 535 U.S. 685, 694). The Supreme Court has held that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409 (2000).

"[I]t is past question that the rule set forth in Strickland, qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v Taylor, supra at 391. Under Williams, a petitioner may therefore be granted habeas corpus relief on a claim of ineffective assistance of counsel only if the decision of the state court was contrary to, or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).

8 - REPORT AND RECOMMENDATION

Under <u>Strickland</u>, a claim that counsel's assistance was so ineffective as to require reversal of a conviction has two components. First, the petitioner must show that counsel's performance was deficient; second, the petitioner must show that the deficient performance prejudiced the defense. <u>Id</u>. at 687.

The first prong of the <u>Strickland</u> test required the petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness. <u>Strickland</u>, <u>supra</u> at 688. The second component of the test requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>., at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome." <u>Id</u>.

If a petitioner pleads guilty or no contest, the prejudice analysis is somewhat different. In those circumstances, the petitioner must prove that but for counsel's deficiencies, he or she would have gone to trial. <u>Hill v. Lockart</u>, 474 U.S. 52, 59 (1985) (petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

When considering ineffective assistance of counsel claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the

facts of his case in an objectively unreasonable manner."
Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (*per curiam*).

In this case, the PCR trial court denied relief on
petitioner's ineffective assistance of counsel claims.
Respondent's Exhibits 123 and 124. The PCR court decision is
entitled to deference under § 2254(d)(1) because it is not
contrary to or an unreasonable application of *Strickland*. In
addition, I find that the PCR court decision is correct on the
merits and supported by the record before the court.

Petitioner's trial counsel provided an affidavit in the
PCR proceeding that stated that he told petitioner she was
unlikely to achieve a better outcome if she went to trial
rather than accepting the offer that was made to her. He
further advised petitioner that a significantly longer
sentence was possible if she was found guilty on all counts.
Counsel advised petitioner that the deal mirrored the best
outcome that could have been expected had the case gone to
trial, which was a not-guilty verdict on the aggravated murder
charge and guilty verdicts on the remaining charges.
Moreover, the settlement judge told petitioner that, in light
of the facts, the deal was "fairly beneficial", an assessment
with which the trial counsel agreed. Respondent's Exhibit
116, p. 2-3.

Counsel further stated in his affidavit that given the
"overwhelming evidence against [petitioner]" the plea
agreement was a "favorable resolution" of the charges against

10 - REPORT AND RECOMMENDATION

her. Id, p. 4.    Although petitioner did receive a longer sentence than her co-defendant, the prosecutor indicated that the victim would identify petitioner as the individual who struck the victim in the head.    Under these circumstances, trial counsel felt that "no reasonable person would have rejected this plea deal," and no additional investigation would have improved petitioner's position.    Id.

Under Oregon law, sentences for criminal offenses against the same victim arising out of the same criminal episode may run consecutively if the crimes were not merely incidental but there was an indication of the defendant's willingness to commit more than one crime, or that the crimes caused qualitatively different or greater loss, injury or harm to the victim. ORS 137.123, *see also*, State v. Anderson, 208 Or App 409 (2006), *rev. denied* 343 Or 33 (2007).

The record reflects that petitioner and her co-defendant forced their way into the elderly victims house (burglary); bound the victim, and when the victim freed herself, forced her into the bathroom, bound and gagged her, and confined her there (kidnapping); hit the victim in the head with a wrench (assault); and used the threat and use of force to retain the victim's property (robbery).    Petitioner's conduct was composed of several consecutive criminal acts and a reasonable fact-finder would almost certainly infer petitioner's willingness to commit more than one criminal offense against the same victim.

In addition, evidence supports that these crimes caused qualitatively different harms to the victim.  Petitioner and her co-defendant invaded the victim's home and stole her belongings (burglary); they repeatedly bound the elderly victim and forced a towel into her mouth and when she resisted threw her into a bathtub and sprayed her with a fire extinguisher (kidnapping); they struck her in the head with a wrench (assault) in part to be able to take her property without resistance (robbery).

Thus, there was evidence that petitioner engaged in several consecutive, rather than simultaneous acts and was therefore subject to consecutive sentences. If convicted of all counts, petitioner faced a sentence of 40 years - fifteen years longer than to which she agreed. Under these circumstances, counsel's advice regarding the plea and stipulated consecutive sentences was reasonable.

In addition I find that the record clearly supports the PCR court finding that petitioner's plea was voluntary.

I find that petitioner has failed to establish that her trial attorney was deficient with regard to his plea advice. In addition, Petitioner has failed to establish there is a reasonable probability that but for counsel's alleged errors, she would not have pleaded guilty and would have insisted on going to trial - *ie.* the prejudice prong of the *Strickland* analysis.  A properly and correctly advised  person would not have risked going to trial that would have probably resulted

in guilty verdicts on all counts and a 40 year sentence.

The standard for determining the validity of a guilty pleas "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford , 400 U.S. 25, 31 (1970); United States v. Brady, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).

In Mabry v. Johnson , 467 U.S. 504 (1984), the court stated:

> "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange."

Id. at 508. The court further stated that it is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired. Id. at 509.

In assessing the "consensual character" of a guilty plea, the Mabry Court reiterated that Brady v. United States is the applicable standard:

> [A] plea of guilty entered by one who is fully aware of the direct consequences including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentations (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (eg. bribes).

13 - REPORT AND RECOMMENDATION

*Mabry*, 467 U.S. at 509 (*quoting Brady*, 397 U.S. 755).

In Blackledge v. Allison, 431 U.S. 63 (1977). The Court addressed the presumption of verity to be given the plea proceeding record when the plea is subsequently challenged in a collateral proceeding, specifically noting that the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceeding." Id, at 73-74. The Court concluded: "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74.

In this case, petitioner and the state engaged in a settlement proceeding, and early in the proceeding, petitioner was crying. Respondent's Exhibit 116, at p. 3. [2] However, after she accepted the deal, she ceased crying, and she was not crying when trial counsel read the petition (agreement) to her or when she signed it. Id. Petitioner seemed worried, but not abnormally upset given the situation and was not hysterical. The judge did not pressure her to sign the petition. He did tell her that, in light of the facts, the deal was favorable to her Id. Before petitioner signed the plea petition, trial counsel read it to her to be sure that she knew what she was signing, and petitioner indicated that she

---

[2] It appeared to petitioner's attorney that she was attempting to get the settlement judge's sympathy.

understood. Petitioner told her attorney that she did not want to sign it, but knew it was her best option under the circumstances. Id.

In the plea petition, petitioner acknowledges that her attorney advised her as to the nature of the charges against her, and any potential defenses. Respondent's Exhibit 103, p. 1.  She also acknowledged that she was satisfied with her attorney's representation, that her mind was clear, and that she was not ill. Id. at p. 1-2.  Petitioner acknowledged that she was pleading guilty to avoid a potentially harsher sentence, and agreed that the facts recited by the deputy district attorney could be proven beyond a reasonable doubt at trial.  Id. p. 2-3.  She further acknowledged that she was pleading guilty freely and voluntarily, and that no one had made any threats or promises to her. Id. at p. 4.

In her PRC trial deposition, petitioner agreed that her attorney did not threaten or cajole her, but did tell her that she was likely to be convicted on all counts and to receive a considerably longer sentence than she agreed to. Respondent's Exhibit 121, p. 20.

At petitioner's plea hearing she agreed that her decision to accept the plea offer was made without pressure, and that her decision was made with the advice of counsel, freely, and voluntarily.  She agreed that she had all the time she needed to talk to her lawyer, and that her lawyer answered all her questions. Respondent's Exhibit 104, p. 3-4.

Subsequently, Petitioner apparently had buyer's regret and moved to withdraw her plea claiming that she had been pressured and coerced into signing. Her motion was denied by the sentencing judge who made the following observations:

> Quite frankly, for the record - I want to make this statement - that during the period of time that these negotiations were discussed with Ms. Deverell when I was in the room, no one gained (sic) up on her. No one put any pressure on her. And in fact before she voluntarily and of her own free will agreed to sign the *Alvord* plea, I told her if she felt she was innocent she should not plead guilty and she should proceed to trial.
>
> \* \* \*
>
> Well, I'm completely satisfied that neither you nor I put any pressure on her whatsoever, Mr. Johnson, and I'm completely satisfied that you acted at all times properly, as I feel the Court acted properly at all times, and professionally in this matter.
>
> And I'm completely confident that she understood what she was doing, and I'm going to - the presiding judge has previously denied that request of yours [to withdraw], and I'm not going to overrule the presiding judge.

Respondent's Exhibit 105, p. 2-4.

Thus, petitioner's own statements, her lawyer's statements and those of the settlement and sentencing judge, as well as the plea petition itself, clearly indicate that petitioner entered intelligent, knowing and voluntary no contest pleas.

Based on all of the foregoing I find that all of petitioner's claims were procedurally defaulted when she failed to present any federal claim to the Oregon Supreme Court. Even if petitioner's inadequate plea advice claim was properly before the court, the state court judgment denying relief is entitled to deference and is correct on the merits. Petitioner's Petition (#2) should be denied

and this proceeding should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen(14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

### *Certificate of Appealability*

*Should petitioner appeal, a certificate of appealability should be denied as petitioner has not made a substantial showing of the denial of a constitutional right. See, 28 U.S.C. § 2253(c)(2).*

DATED this _23_ day of February, 2010

17 - REPORT AND RECOMMENDATION

Mark D. Clarke
United States Magistrate Judge

18 - REPORT AND RECOMMENDATION